## IRVING L. TURNER v. INVENTORS ENGINEERING, INC.

224 N. W. 2d 357.

December 13, 1974—No. 44561.

*Thiel & Sorenson* and *Russell A. Sorenson,* for appellant.
*Harold E. Farnes,* for respondent.

Heard before Sheran, C. J., and Otis and Todd, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action for damages resulting from defendant's failure to issue plaintiff shares of stock pursuant to an option which plaintiff sought to exercise. A jury awarded plaintiff the sum of $64,800 and defendant appeals from the judgment and from an order denying judgment n. o. v. or a new trial. We affirm.

Defendant, Inventors Engineering, Inc., was founded by Allan T. Quello, an attorney at law, in the year 1965, for the purpose of developing and exploiting patents. Quello negotiated with plaintiff, Irving L. Turner, a stockbroker, to undertake the sale of stock in the company in 1967. By 1970 Inventors was in financial difficulty and Turner was hired to operate the company

as its president. He succeeded in putting the company on a sound financial basis, and in January 1971 entered a contract of employment, the pertinent paragraph of which is as follows:

"12. The Company agrees to grant the Employee an option to purchase 40,000 shares of its Common Stock at a purchase price of $.25 per share; such option shall be exercisable in whole or in part for a period of three years commencing January 1, 1971, shall be transferable, and shall survive the termination of employment of the Employee should such termination occur prior to January 1, 1974."

As a result of a basic policy disagreement, the directors of the company in May 1971 requested plaintiff to resign, which he did on May 27. Shortly thereafter, on June 11, the company adopted a resolution purporting to rescind the option which it gave plaintiff in paragraph 12 of its employment contract. The following year, on February 7, 1972, plaintiff gave defendant notice that he was exercising his option and tendered $10,000 for which he demanded 40,000 shares of stock in the company. Defendant refused the tender and this litigation followed.

The principal issues raised by defendant are (1) whether it was error to charge the jury that defendant had the burden of proving that the "common stock" described in the employment contract referred to "restricted" or "lettered" stock; (2) whether it was error for the court not to submit to the jury the question of whether plaintiff breached the contract; and (3) whether there was a failure of consideration which justified the company in rescinding the option.

1. Defendant argues that the only stock the company had available for delivery to plaintiff was lettered or restricted stock which could not be traded without complying with Minn. St. 1971, c. 80, the so-called Blue Sky law, and consequently such stock had only nominal value. We do not agree. Minn. St. 1971, § 80.06, subds. 1 and 2(a), provide as follows:

"Subdivision 1. The provisions of sections 80.05 to 80.27

\* \* \* shall not apply to sales of the character set forth in this section.

"Subd. 2. (a) Any isolated sales of any securities by the issuer or owner thereof, or by a representative for the account of such issuer or owner, such sales not being made in the course of repeated and successive sales of securities of the same issue by such issuer or owner or by such representative for the account of such issuer or owner."

We have no difficulty in holding that this was an isolated transaction which did not necessitate compliance with the provisions of c. 80 requiring registration of the stock. We find support in this conclusion by what we said in State v. Hofacre, 206 Minn. 167, 173, 288 N. W. 13, 16 (1939), that the purpose of the Blue Sky law is "to curb the activities of those who by ingenious subterfuge or by fraudulent means seem bent on disposing to the ignorant and gullible fraudulent or speculative securities." In the instant case, it was plaintiff and not defendant who negotiated the option, and both parties to the contract were experienced and sophisticated in business matters.

Plaintiff argues that defendant's position that the option was illegal because of failure to register the stock is an affirmative defense within the meaning of Rule 8.03, Rules of Civil Procedure, which must be pleaded and proved by defendant. Defendant's answer contains no reference to the question of whether or not the stock was restricted and makes no mention of c. 80. The same may be said of defendant's pretrial statement of the facts and issues. Nor is reference made to the issue in the court's pretrial order. The question was first raised after the trial was in progress. In any case, the matter of whether the stock referred to in the option was to be registered or lettered was fully litigated by both sides and determined adversely to defendant by the jury in its special verdict which was answered in the following manner:

"Did both parties have restricted stock in contemplation in the stock option agreement of January 16, 1971?

"No."

We hold that under the circumstances it was not error to require defendant to sustain the burden of proving that the stock was intended to be lettered.[1]

2. It is defendant's contention that the trial court should have submitted to the jury the question of whether plaintiff breached his contract in a manner which would justify defendant in rescinding its option. It is argued that the termination of plaintiff's employment was voluntary and resulted in a repudiation of the contract and a failure of consideration. These were matters which defendant asserts should have been resolved by the jury and not by the court. Cases cited by defendant, such as Hillside Cemetery Assn. v. Holmes, 97 Minn. 261, 105 N. W. 905 (1906); and Maytag Co. v. Alward, 253 Iowa 455, 112 N. W. 2d 654, 96 A. L. R. 2d 162 (1962), deal with stock options where the employee was guilty of a breach of contract. Such is not the case in the matter before us. It is undisputed that plaintiff was requested to resign and did so for that reason. His contract permitted him to exercise his option any time before January 1, 1974, even if his employment was terminated prior to that date. On this record there was no fact question for the jury to decide with respect to that issue, and it was proper for the court to submit only the question of damages.

3. We have considered the issue of whether there was a failure of consideration and find it to be without merit.

Affirmed.

---

[1] We do not pass on what restrictions, if any, are imposed on plaintiff by state or Federal laws and regulations governing the trading of stock transferred by stock option. Nor do we decide what steps defendant may take to protect itself from the effect of plaintiff's receiving and trading the lettered stock defendant issues. We simply hold that by the terms of the contract plaintiff was entitled to receive registered or tradable stock and defendant's failure to deliver it supports an award of damages to plaintiff.