Craig A. KNUDSEN, Respondent,

v.

NORTHWEST AIRLINES, INC., Petitioner, Appellant.

No. C5-88-2070.

Supreme Court of Minnesota.

Jan. 12, 1990.

Peter Bologna, Northwest Airlines, Inc., St. Paul, and Eric J. Magnuson, Minneapolis, for appellant.

William L. Lucas, Harvey, Thorfinnson & Scoggin, Eden Prairie, for respondent.

KEITH, Justice.

This action for breach of a stock option contract is before us on appeal from a reversal of the trial court's summary judgment for appellant, Northwest Airlines, Inc. ("Northwest"). *Knudsen v. North-*

*west Airlines, Inc.*, 437 N.W.2d 733 (Minn. App.1989). The court of appeals decided that the issue of whether respondent, Craig A. Knudsen, was fired for cause was material, and a genuine issue existed as to the reason for his dismissal.

The parties do not dispute the basic facts. Respondent, Craig A. Knudsen, while a management employee of Republic Airlines ("Republic"), entered into a Stock Option and Stock Appreciation Agreement ("Agreement") offered by Republic pursuant to a Stock Option and Stock Appreciation Right Plan ("Plan"). The Agreement granted Knudsen the option to buy 600 shares of Republic common stock at $6.50 per share and to receive in cash the appreciation above $6.50 per share on 600 shares of common stock. Under the Agreement, the option rights could be exercised in thirds: one-third after April 24, 1986; one-third after April 24, 1987; and the balance after April 24, 1988. Paragraph No. 7 of the Agreement stated:

> *Termination.* In the event that the Employee shall cease to be a management employee of the Company (i.e., an employee whose salary and benefits are not determined by a collective bargaining agreement) for any reason, the ISO and SAR may be exercised by the Employee (to the extent that the Employee is then vested) at any time prior to such termination.

In January 1986, NWA Inc., Northwest's parent company, acquired Republic upon certain conditions. The merger agreement accelerated the vesting of Republic's outstanding stock option and appreciation rights to the effective date of the merger. The agreement defined the effective date of merger as the date when all contingencies of the agreement had been satisfied, including United States Department of Transportation approval. Those conditions were met as of August 12, 1986, which became the effective merger date. As of that date, NWA Inc. paid $17 for each outstanding share of Republic common stock and Republic paid cash for the appreciation rights.

Knudsen exercised his vested first third of the stock option rights shortly after April 24, 1986. Before the remaining two-thirds of his stock rights vested, Knudsen was terminated, effective July 15, 1986. On October 9, 1986, Knudsen wrote to Northwest stating that he wanted to exercise his remaining stock rights. Northwest refused, citing the terms of the Agreement. As a result, Knudsen commenced this breach of contract action on February 5, 1987.

On January 11, 1988, Knudsen sent Northwest Set III of Plaintiff's Interrogatories. Interrogatory numbers 18–45 and 47–49 requested information on the reasons for Knudsen's termination and on the number of employees terminated between January and August 12, 1986. Northwest objected to those interrogatories on the basis of relevancy and moved for summary judgment. Knudsen then moved for an order compelling answers to interrogatories. The trial court granted summary judgment and denied the motion to compel answers. The court of appeals reversed finding a genuine issue of fact existed with respect to the reason for Knudsen's discharge.

In reviewing an order for summary judgment, this court must determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979). A material fact is one the resolution of which will affect the outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). Whether the reason for Knudsen's dismissal constitutes a material fact is a question of law. *Cf. Holisak v. Northwestern Nat'l Bank*, 297 Minn. 248, 251, 210 N.W.2d 413, 415 (1973); *cf. also Hursh v. Village of Long Lake*, 247 Minn. 1, 5, 75 N.W.2d 602, 605 (1956). Where lack of an issue is indicated on a motion for summary judgment, the motion must be granted unless the party opposing the motion shows existence of a triable issue. *Vosbeck v. Lerdall*, 245 Minn. 164, 167, 72 N.W.2d 371, 374 (1955).

Knudsen claims breach of the stock option contract. He alleges, in effect, that

Northwest breached a covenant of good faith and fair dealing found in all contracts. This covenant says that a party who prevents performance by the other party may not benefit by so doing. In support of his allegation, he cites *Craigmile v. Sorenson,* 248 Minn. 286, 292, 80 N.W.2d 45, 49 (1956) (holding vendor who reserves in contract for deed right to approve insurance placed on buildings and who does not approve insurance in good faith so vendee can comply, thereby prevents performance; by preventing performance, vendor could not claim default and effect cancellation of contract) and *Haase v. Stokely–Van Camp, Inc.,* 257 Minn. 7, 12–13, 99 N.W.2d 898, 901–02 (1959) (holding in contract between cannery and farmer involving growing and delivery of crop under control of buyer, buyer could not make it impossible for farmer to dispose of crop and then refuse to pay farmer under contract terms).

Based on this concept, Knudsen argues that he is entitled to payment because he was fired for reasons not his fault. Apparently he reaches this conclusion by translating the alleged fact that he was not fired "for cause" into an assumption that such a firing is equivalent to the employer preventing the employee from performing the conditions of the Agreement.

■ Such a conclusion is erroneous in view of the facts of this case. The stock option contract at issue here provided for its own expiration in the event a covered employee "cease[d] to be a management employee of the Company * * * for any reason." The phrase "for any reason" is a facially unrestrictive termination provision that permits termination of an employee with or without cause, by the employee's own will or that of the employer. Knudsen agreed to the terms and conditions of the Agreement when he signed it. He does not dispute its validity or enforceability.

We have held that where an employee enters into a stock option agreement that is granted on certain terms and conditions, he is bound by those conditions. *See Pillsbury Co. v. Elston,* 283 N.W.2d 370, 374 (Minn.1979) (holding repurchase provision of stock option contract enforceable by employer because it was one of conditions of option to which parties agreed); *cf. Turner v. Inventors Eng'g, Inc.,* 302 Minn. 278, 281, 224 N.W.2d 357, 360 (1974) (holding that there was no issue as to whether employee had breached contract by resigning, because option contract permitted him to exercise option any time prior to option's expiration date, even if employment ceased prior to that date).

■ Our holding does not mean we would not recognize situations in which a broad termination provision in a stock option contract would be subject to a good faith finding of cause before the stock rights could be denied. Obviously, when termination was in contravention of discrimination law or for a reason similar to those already recognized by Minnesota law as an exception to the at-will doctrine,[1] the situation would require a different holding. That is not the case here.

■ Knudsen entered into the Agreement which conditioned exercise of the rights contained therein and which provided a definite time for expiration of the offer. One condition was that upon exercise of his rights, he was still employed in a managerial role. He received one-third of his rights two months prior to his termination. The option expired under its own terms whenever he ceased, for any reason, to be a managerial employee. He agreed

---

1. Minnesota has recognized four exceptions to the at-will doctrine. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627–30 (Minn.1983) (holding that at-will employment doctrine can be altered by job security provisions included in an employee handbook); *Phipps v. Clark Oil & Ref. Corp.,* 408 N.W.2d 569, 571 (Minn.1987) (holding at-will employee has action for wrongful discharge when terminated for refusal to violate a law); *Bussard v. College of St. Thomas, Inc.,* 294 Minn. 215, 223, 200 N.W.2d 155, 161 (1972) (independent consideration beyond personal employment services can create a contract limiting discharge to good cause); *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114 (Minn. 1981) (promissory estoppel principles used to imply good faith opportunity to perform duties; thus plaintiff was entitled to damages he incurred by leaving employment in reliance upon an employment offer which was revoked before plaintiff could begin to work).

**134**

to the condition that his managerial role could be terminated for any reason and in the event it was, the option expired.

Under the facts of this case, no persuasive reason is advanced for finding that the termination provision should be interpreted to require a for cause dismissal and we decline to extend existing law. Consequently, the issue of termination for cause does not constitute a material issue because it is irrelevant. Therefore, summary judgment is appropriate. The court of appeals is reversed.