DANIEL P. GOSLINE *vs.* PRINCE MACARONI MANUFACTURING COMPANY.

Suffolk.    March 23, 1922. — June 19, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Contract,* Construction, Performance and breach.

At the trial of an action for breach of a contract in writing relating to the sale and installation in a macaroni factory of the defendant of an "Ebulator System," designed to produce a degree of temperature and dryness in the air to assist in manufacture of the defendant's product, it appeared that the contract was dated November 8 and provided that the plaintiff would put in at his own expense a trial installation of the system in a room in the defendant's macaroni factory, then under construction, that the defendant "is to make the required connections under the instructions of the party of the first part," (the plaintiff,) that, if, in the room where the trial installation was to be made, good macaroni was produced with economy in operation, the system should then be installed in the remaining ten rooms on that floor at a certain price; that "It being also understood and agreed that since no Refrigerating Apparatus is to be furnished the performance of either installation is to be judged during the cold weather as Refrigerating Apparatus is positively necessary for the Hot Dog Day weather to produce right results. . . . It is agreed by the party of the first part that he shall start the trial installation within one month after the date of the signing of this contract, and further shall proceed with the complete installation as fast as possible after the same shall be commenced, but shall not be held liable for delays brought about by conditions over which said party has no control." There was testimony from the plaintiff that the system would do as it was designed to; that to install the system certain connections including water, electricity, heating and draining were required to be made; that in the latter part of November the plaintiff began work on the ebulator, continued work in December and January and on January 10 gave the defendant a letter of instructions as to installation; that on January 30 the plaintiff notified the defendant that the ebulator was practically ready for the steam and water connections, and requested it to make the necessary connections as soon as possible. Thereafter, although, throughout two successive winters and in the intervening summer, the defendant repeatedly was requested by the plaintiff to make the connections, he failed to do so and for that reason there could be no proper test made to demonstrate whether the system could produce good macaroni with economy in operation, as the plaintiff claimed for it. The jury viewed the factory and the apparatus. A motion by the defendant that a verdict be ordered in his favor was denied and there was a verdict for the plaintiff. *Held,* that

(1) If the jury believed the testimony of the plaintiff, they could have found that he was at all times ready, willing and able to perform his contract if the defendant had made the necessary connections, and that by using the machine

the defendant could have procured good macaroni in at least half the time then required;

(2) It was for the jury to determine on all the evidence whether the plaintiff had sustained the burden of proving a breach of the contract on the part of the defendant;

(3) Since the contract required the defendant to "make the required connections under the instructions" of the plaintiff, a finding was warranted that as a condition precedent to the making of a proper test, it was the duty of the defendant to furnish such appliances as reasonably were required to make the connections, and that it was not the duty of the plaintiff to furnish such appliances;

(4) The motion that a verdict be ordered for the defendant properly was denied.

CONTRACT for breach of the agreement in writing described in the opinion. Writ dated June 16, 1919.

In the Superior Court, the action was tried before *Fessenden*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict in its favor be ordered. The motion was denied. There was a verdict for the plaintiff in the sum of $3,859.43; and the defendant alleged exceptions.

*J. T. Zottoli*, for the defendant.

*W. B. Grant*, (*E. S. Fernald* with him,) for the plaintiff.

CROSBY, J. This is an action to recover damages for breach of a written contract for the installation in the defendant's factory of a patented machine, called an "Ebulator" or "Ebulator System," to cure macaroni with economy in operation. The machine was invented and manufactured by the plaintiff. There was evidence that an ebulator had been used in factories of different kinds — in textile mills, cigar and tobacco factories, in sole leather, candy and film rooms, art museums and places where a dry, moist air, or warm or cold temperature is required — it being claimed by the plaintiff that by the use of the system any desired degree of temperature or moisture required in a room can be produced and maintained.

The contract provides that the plaintiff will put in at his own expense a trial installation of the system in a room in the defendant's macaroni factory, then under construction on Commercial Street in Boston; that the defendant "is to make the required connections under the instructions of the party of the first part." There was evidence that to install the system certain

connections including water, electricity, heating and draining were required to be made. The contract further provides that, if in the room where the trial installation was to be made good macaroni was produced with economy in operation, the system should then be installed in the remaining ten rooms on that floor, at a certain price; that "It being also understood and agreed that since no Refrigerating Apparatus is to be furnished the performance of either installation is to be judged during the cold weather as Refrigerating Apparatus is positively necessary for the Hot Dog Day weather to produce right results. . . . It is agreed by the party of the first part that he shall start the trial installation within one month after the date of the signing of this contract, and further shall proceed with the complete installation as fast as possible after the same shall be commenced, but shall not be held liable for delays brought about by conditions over which said party has no control."

The only question of law before us is whether the presiding judge erred in refusing to direct a verdict for the defendant. All the material evidence is recited in the record. The contract is dated November 8, 1917. There was evidence that on November 23, 1917, the plaintiff began work on the machine which he was to install, and wrote the defendant that he would like to meet its representative and give instructions in regard to the matter of connections, as there would be a large saving of expense if they were made while the building was in the process of construction; that the plaintiff put his men at work on the ebulator in November and thereafter work was done upon it in December and January following; that a letter of instructions was sent by the plaintiff to the defendant on January 10; that during the week of January 25 the plaintiff began to install the ebulator on the premises; that by letter dated January 30 he notified the defendant that the ebulator was practically ready for the steam and water connections, and requested it to make the necessary connections as soon as possible, the letter further stating, "Our work ought to be finished by tomorrow, and you will understand that it will be necessary to get the connections made so that a test will be run and that no delay occur;" that although the plaintiff personally and by letter frequently requested the defendant to make the connections, it failed to do so, and for that reason there could be

no proper test made to demonstrate whether the system could produce good macaroni with economy in operation, as the plaintiff claimed for it.

The contract provides that as no refrigerating apparatus was to be furnished the tests were required to be made during cold weather; it could have been found that, owing to the neglect and failure of the defendant to make such connections during the winter of 1917–1918, no test of the system could be made during that time.

The contract recites that the connections are to be made by the defendant under the instructions of the plaintiff.   These instructions, contained in the letter of January 10, relate to connections with the water system, the drain, steam for two radiators, for thermostats, wiring, the setting up of one radiator on the floor, the other to be suspended from the ceiling in front of the ebulator, which was suspended from the ceiling in the hallway outside the room where the macaroni was to be cured and with an opening at the ceiling cut into the room the size of the ebulator, which was a metal box containing machinery.   The plaintiff testified that the connections never were made, that the radiator was not suspended from the ceiling, and although a test was attempted in April, 1918, it was unsatisfactory.

There was evidence that in the summer of 1918 the plaintiff tried to induce the defendant to install a refrigerating plant so that the system could be put in the factory and the work completed, but that he did not succeed and finally it was agreed to let matters stand until the winter of 1918–1919; that on December 9, 1918, the plaintiff wrote to the defendant requesting it to make proper connections — that temporary connections would not answer — they must be made as directed by the plaintiff; that the defendant's representatives were repeatedly urged from December 9 until the following spring to make the connections and they many times promised to do so; that on March 4, 1919, the plaintiff wrote to the defendant stating that at the defendant's request he had waited for a third season for it to make the connections as provided by the contract, that no test could be made until the defendant's work was done, that "Three months of the season is now passed and I have held myself ready to do my part long ago;" that in reply the defendant on March 10 wrote that

the steam and water connections had been made; and that the plaintiff on March 13 sent one of his men to the defendant's factory and thereafter went himself and found that no connections had been made.

If the jury believed the testimony of the plaintiff, they could have found that he was at all times ready, willing and able to perform his contract if the defendant had made the necessary connections, and that it could by using the machine have procured good macaroni in at least half the time then required. The jury viewed the premises and the apparatus; it was for them to determine on all the evidence whether the plaintiff had sustained the burden of proving a breach of the contract on the part of the defendant.

While the defendant contends that the plaintiff was bound to install the system at his own expense, it does not follow that the defendant was to be relieved of any expense in connection with such installation because it agreed to "make the required connections under the instructions" of the plaintiff. The jury could have found that in making such connections it was necessary to procure and use certain appliances at its own expense and that it failed to do so. In other words, it could have been found that as a condition precedent for the making of a proper test, it was the duty of the defendant to furnish such appliances as reasonably were required to make the connections, and that it was not the duty of the plaintiff to furnish such appliances.

The instructions to the jury are not before us; we must assume that they were accurate and sufficient upon all the issues involved. It could not have been ruled that the finding for the plaintiff was without evidence to support it.

*Exceptions overruled.*