**AMERICAN WAREHOUSING AND DISTRIBUTING, INC., Appellant,**

v.

**MICHAEL EDE MANAGEMENT, INC., Respondent.**

**No. C0-87-1107.**

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Dismissed Jan. 20, 1988.

Christopher J. Dietzen, Thomas H. Weaver, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

George B. Wyeth, Leonard, Street, and Deinard, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from an order granting respondent Michael Ede Management, Inc. its motion for summary judgment. Appellant American Warehousing & Distributing, Inc. was a distributor of products supplied by respondent pursuant to a four-month written contract. Appellant claims that respondent by its acts and omissions (1) breached the contract, (2) breached an implied duty of good faith dealing, and (3) tortiously interfered with appellant's business relations with a third party. The trial court found no genuine issue of material fact and ruled that respondent was entitled to judgment as matter of law on all three issues. We affirm.

## FACTS

Appellant contracted with respondent to distribute tire pressure monitors supplied by respondent. Respondent in turn had purchased the product from the manufacturer in Europe. The parties signed a written distributorship agreement on April 29, 1982.

Prior to the agreement, respondent had the exclusive marketing rights to distribute the product in Canada and the United States. The agreement gave appellant exclusive marketing rights in Minnesota, Wisconsin, North Dakota, South Dakota, northern Michigan, and part of Montana. The agreement provided that appellant would

not sell its product in respondent's remaining territory.

Appellant's exclusive distributor rights were to last for four months beginning April 29, 1982, the date of the contract. Paragraph 14, the crux of the dispute, reads:

14. The Supplier undertakes to provide all reasonable assistance to the Distributor with regard to the sale of the Product, and specifically agrees to do all those acts and things specified in Schedule 5.

Schedule 5 reads:

### ASSISTANCE TO BE PROVIDED BY SUPPLIER

Sales literature, sales aids, field training and sales assistance

Field training and sales assistance to be three—one week visits on three concurrent months.

The principal officer of appellant is Anthony R. Dorso, and Duane Mach is an employee with substantial responsibility. The principal officers of respondent are Lorne Hasinoff and Michael Ede. (Respondent had claimed that Hasinoff actually was an officer of an affiliated corporation and not an officer of respondent. However, for purposes of the summary judgment motion, the trial court treated him as an authorized agent of respondent.)

At the end of four months, appellant had excess inventory which it could not sell. In early 1983, Duane Mach contacted Hasinoff to ask if he could return the unsold inventory. Mach told Hasinoff that he wanted to protect respondent by avoiding the adverse market reaction which would result from appellant's dumping the product on the market at a low price. Hasinoff refused the return of inventory. However, Hasinoff did agree to continue the distributorship agreement so that appellant could dispose of its inventory.

Subsequently, appellant advertised the product for sale in a trade publication circulated in Texas, Louisiana, and Oklahoma. In early 1983, Mach contacted Terry McCarty of Texas Mail Service, a potential buyer of the excess inventory. McCarty said he was interested but that he would first have to do some checking. McCarty then contacted Michael Ede, a principal of respondent, from whom he had previously bought the product. Ede told McCarty that the product offered by appellant was of the same quality previously supplied by Ede to McCarty. McCarty then told Ede that he would prefer to continue buying from Ede rather than from appellant.

McCarty and Mach then spoke with each other. Mach claims that McCarty said he would not buy the product because it was discontinued, obsolete, and no longer under warranty. McCarty claims he told Mach that he would not buy the product because it did not have appropriate pressure settings.

Mach then contacted Hasinoff and asked Hasinoff to send him a letter stating that the product was still under warranty. Hasinoff refused to send the letter, telling Mach that he would not allow appellant to compete with respondent in the Dallas/Fort Worth area. Mach claims that he would have made the sale to Texas Mail Service had Hasinoff written him the letter he requested.

Appellant also alleges that Hasinoff promised that he would travel to appellant's place of business to provide sales assistance. According to appellant, Hasinoff never fulfilled his promise. These allegations are contained in Anthony Dorso's affidavit which appellant submitted four days after the December 1, 1986 summary judgment hearing. The court stated that appellant should have moved under Rule 56.06 to continue the hearing if it wanted to submit the affidavit. Consequently, the court did not consider the facts set forth in this affidavit.

### ISSUES

1. Did the trial court err by not considering Anthony Dorso's affidavit in making its decision?

2. Did the trial court err in determining there were no genuine issues of fact and that respondent was entitled to judgment on the following claims:

(a) breach of the distributorship contract;

(b) breach of covenant of good faith and fair dealing; and

(c) tortious interference with appellant's business relationship with Texas Mail Service?

## ANALYSIS

### Untimely Affidavit

Minn.R.Civ.P. 56.03 provides that "the adverse party *prior to the day of hearing* may serve opposing affidavits" (emphasis added). If the party does not submit affidavits prior to the day of hearing, the court, in its discretion, may continue the hearing to permit affidavits to be obtained. Minn.R.Civ.P. 56.06. However, Rule 56.06 also requires the party to provide by affidavit the reason why it cannot comply with the deadline.

■ In this case, appellant obtained and submitted Dorso's affidavit after the date of the hearing. It submitted no affidavit or any other explanation why Dorso's affidavit was untimely. Furthermore, this action was commenced in 1983 and respondent moved for summary judgment on October 7, 1986. There is no readily conceivable explanation why appellant could not obtain the affidavit in time for the December 1, 1986 hearing. Consequently, the trial court was within its discretion in refusing to consider Anthony Dorso's affidavit. *See Montgomery v. American Hoist & Derrick Co.*, 350 N.W.2d 405, 408 (Minn. Ct.App.1984).

### Breach of Distributorship Agreement

Appellant claims respondent breached the written contract by refusing to provide a letter of warranty to Texas Mail Service. Appellant claims that this refusal violated Paragraph 14 which provides, in part, "The supplier undertakes to provide all reasonable assistance to the distributor with regard to the sale of the Product."[1] Appellant claims he could have sold the product to Texas Mail Service (in Texas) had respondent provided reasonable assistance by writing a letter of warranty. However, Paragraph 4 of the contract upon which appellant relies specifically prohibits appellant from "knowingly sell[ing] the product within the * * * [respondent's] territory." The second clause of the contract specifically recites that respondent had exclusive rights to sell the product everywhere in the United States (other than in appellant's territory).

■ We cannot see how this contract can be read to prohibit appellant from selling in an area and at the same time require respondent to assist appellant in making a sale in the prohibited area. Such a construction is absurd and is to be avoided. *See Employer's Mutual Liability Ins. Co. v. Eagles Lodge*, 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969). Instead, all contract provisions should be harmonized whenever possible. *Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 293, 135 N.W.2d 681, 685 (1965) (quoting *Country Club Oil Co. v. Lee*, 239 Minn. 148, 151–52, 58 N.W.2d 247, 249 (1953)).

In this case, paragraphs 4 and 14 are easily harmonized to mean that respondent must assist appellant in all sales contemplated by the terms of the contract. The contract clearly does not contemplate, and in fact prohibits, any sales in respondent's territory. Consequently, appellant had no contractual right to sell his product to Texas Mail Service in the Texas area. Appellant thus has no breach of contract claim.

### Breach of Covenant of Good Faith and Fair Dealing

■ In every non-sales contract there is an implied covenant of good faith and fair dealing which requires that one party not make it impossible for the other party to perform the contract. *Haase v. Stokely Van–Camp, Inc.*, 257 Minn. 7, 13, 99 N.W. 2d 898, 902 (1959) (cited in *Wild v. Rarig*, 302 Minn. 419, 441, 234 N.W.2d 775, 790

---

1. Paragraph 14 of the contract also incorporates Schedule 5, which requires that respondent provide sales training during three one-week visits. Appellant did not allege a breach of this particular provision in its complaint or trial brief. The only allegation of breach came in Anthony Dorso's affidavit which was submitted too late.

(1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed. 307 (1976)). Appellant alleges respondent's refusal to write the warranty letter to Texas Air Service prevented it from performing its part of the distributorship contract.

Appellant's duties were to sell the product in its own area—not in Texas. Any attempt to sell to Texas Air Service in Texas was outside the scope of the contract. Therefore, respondent's actions did not prevent appellant from performing the contract and thus were not a breach of the covenant of good faith and fair dealing.

*Tortious Interference with Appellant's Business Relationship*

Appellant's claim of tortious interference is based only upon hearsay allegations. As the trial court properly excluded these hearsay allegations, appellant has provided no competent evidence to support its claim of tortious interference.

### DECISION

There were no genuine issues of fact and respondent was entitled to judgment as a matter of law on each of appellant's three claims.

Affirmed.