In re HENNEPIN COUNTY 1986
RECYCLING BOND
LITIGATION.

Nos. C6–93–2254, C4–93–2253
and C0–93–2251.

Court of Appeals of Minnesota.

May 31, 1994.

Review Granted Aug. 29, 1994.

**64**

William Z. Pentelovitch, Susan D. Holappa, Maslon Edelman Borman & Brand, Minneapolis, for appellant County of Hennepin.

Allen W. Hinderaker, Cecilia M. Michel, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for appellant Hennepin Energy Resource Co. Limited Partnership.

Richard L. Voelbel, Jeffrey I. Ross, Thomas M. Darden, Zelle & Larson, Robert A. Levy, Kathryn J. Bergstrom, Parsinen Bowman & Levy, Jack L. Chestnut, Karl L. Cambronne, Stuart C. Bear, Chestnut & Brooks, P.A., Minneapolis, Mark Reinhardt, Gavin S. Wilkinson, Reinhardt & Anderson, St. Paul, for respondent Bondholders.

Considered and decided by HARTEN, P.J., and KALITOWSKI and PETERSON, JJ.

## OPINION

KALITOWSKI, Judge.

Respondents, bondholders in the construction of a recycling facility (the bondholders), commenced the present action against appellants Hennepin County (the county) and Hennepin Energy Resource Company Limited Partnership (HERC), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and various fraud claims. The bondholders' claims arise from allegations that the county and HERC wrongfully prevented renewal of a letter of credit, thus triggering redemption of the bonds. On appeal: (1) the county contends the district court erred in refusing to dismiss all claims against it because the bondholders failed to comply with Minn.Stat. § 373.06; (2) the bondholders contend the district court erred in dismissing their breach of contract claims; and (3) the county and HERC contend the district court erred in allowing the bondholders to maintain their breach of implied covenant claim as an independent cause of action.

## FACTS

On October 1, 1986, the county funded the construction of a waste-to-energy recycling facility (the facility) by issuing Solid Waste Resource Recovery Revenue Bonds Series 1986A (the bonds) in the amount of $129,250,-000. On that same date, the county agreed to loan the bond proceeds to HERC, which would construct and operate the facility. To secure the bonds the county obtained a letter of credit, which expired on October 15, 1992, from two international banks (the banks).

The bonds were offered for sale to the public by First Trust National Association (the trustee). The bonds were issued pursuant to various documents, including the Official Statement, the Bond Certificates, the Loan Agreement between the county and HERC, and the Trust Indenture Agreement between the county and the trustee (collectively, the bond documents). The Bond Certificates expressly incorporated the other bond documents, thereby defining the rights of the bondholders, the county, and HERC.

According to the Official Statement, the bonds matured upon various dates between 1995 and 2010. The Official Statement contains an optional redemption table, pursuant to which the bondholders would receive premium payments if the bonds were redeemed before their maturity dates. This table indicates that October 1, 1996, was the earliest optional redemption date, and that a redemption at this time would be accompanied by a two percent premium payment. Section 4.06 of the Loan Agreement, which addresses optional redemption, refers to this table.

Section 4.07(f) of the Loan Agreement provides for mandatory redemption if:

[HERC] or the Banks shall not have furnished to the Trustee extension of the expiry date in form satisfactory to the Trustee or issuance and acceptance of a Substitute Letter of Credit or other Alternate Credit Facility complying with the provisions of Section 12.04 of the Indenture at least 45 days prior to the expiry date of the Letter of Credit or Alternate Credit Facility then held by the Trustee.

The Official Statement contains similar language:

The Letter of Credit expires on October 15, 1992, unless earlier terminated in accordance with its terms. If the Letter of Credit is not extended and an Alternate Credit Facility is not provided, all outstanding Series 1986 Bonds will be subject to mandatory redemption upon the termination of the Letter of Credit.

In addition to the redemption provisions, Loan Agreement § 6.13 provides:

In the event that the Banks offer to renew the Letter of Credit, the acceptance of such offer shall require the agreement of both the County and [HERC].

Finally, Loan Agreement § 8.09 states:

This Loan Agreement is executed in part to induce the purchase by others of Bonds and Notes to be issued by the County, and accordingly all covenants and agreements on the part of [HERC] and the County as set forth in this Loan Agreement are hereby declared to be for the benefit of the Holders from time to time of the Bonds and Notes and the Banks in respect of Advances not repaid.

In 1989, HERC sold the facility to United States Trust Company of New York (USTC), then leased the facility from USTC. Pursuant to section 13.13(b) of the lease agreement between these parties, HERC expressly agreed to use

their reasonable best efforts whenever required to procure a renewal or extension of the Letter of Credit or the issuance of an Alternate Credit Facility on a timely basis prior to the expiration of the Letter of Credit or any Alternate Credit Facility then in effect.

The county expressly consented to section 13.13 and incorporated this provision into an amended loan agreement.

The bondholders purchased various amounts of the bonds between 1986 and 1992. The trade confirmation slips indicated that the bonds were callable on October 1, 1996. The bonds had a AAA credit rating.

In July 1992, the county notified the banks that it would not approve an extension of, or a replacement for, the existing letter of credit. The trustee then notified the bondholders that the bonds would be redeemed on October 9, 1992, according to the mandatory redemption provision in section 4.07(f) of the Loan Agreement. All of the bondholders tendered the bonds before October 9, 1992, and they received principal and interest accrued through that date. Following the redemption, the county refinanced its obligations by issuing new bonds at lower interest rates.

The bondholders commenced the present action, alleging: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) various types of fraud. The bondholders' claims arise from allegations that the county and HERC wrongfully prevented renewal of a letter of credit, thus triggering redemption of the bonds. The amended complaint's prayer for relief sought "specific enforcement of payments due" under the bond documents and a "declaration of the parties' rights pursuant to Minn.Stat. § 555.01." Following pretrial motions, the district court: (1) denied the coun-

ty's motion to dismiss the claims against it for failing to comply with Minn.Stat. § 373.-06; (2) dismissed all of the bondholders' breach of contract claims; and (3) refused to dismiss the bondholders' breach of implied covenant claim. This appeal followed.

## ISSUES

1. Did the district court err in refusing to dismiss all claims against the county because the bondholders failed to comply with Minn. Stat. § 373.06?

2. Did the district court err in dismissing the bondholders' breach of contract claims?

3. Did the district court err in allowing the bondholders to maintain their claim for breach of the implied covenant of good faith and fair dealing as an independent cause of action?

## ANALYSIS

### I.

The county contends the district court erred in refusing to dismiss all claims against it because the bondholders failed to comply with Minn.Stat. § 373.06 (1992). We disagree.

■■■ The construction of a statute is a question of law we review de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). Minn. Stat. § 373.06 provides, in part, that:

> No action shall be maintained by any claimant * * * against a county upon any claim except county orders, when the only relief demanded is a judgment for money, until the claim has been presented to the board and it has failed to act upon it within the time fixed by law, or the board consents to the institution of the action.

This statute does not apply "if [the] plaintiff's action is in part an action for equitable relief." *Nadeau v. County of Ramsey,* 310 Minn. 549, 550–51, 245 N.W.2d 254, 256 (1976).

The bondholders pleaded two equitable claims for relief: (1) "specific enforcement of payments due"; and (2) declaratory relief establishing that the redemption violated the parties' contract. The county contends

Minn.Stat. § 373.06 applies to this action because these claims are meritless and were included solely to circumvent the statute. We disagree.

At this stage of the proceedings, the bondholders' claims for equitable relief are sufficient if it is possible, on any evidence that might be produced, to grant the relief demanded. *See Northern States Power v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). The pleadings suggest that the bondholders might be entitled to equitable relief. *See Nadeau,* 310 Minn. at 550–51, 245 N.W.2d at 256 (holding that Minn.Stat. § 373.06 does not apply where the statement of claim indicated the plaintiff "might be entitled to equitable relief"). Although the district court ultimately rejected the bondholders' equitable claims, it did so because it concluded that more effective and complete relief was available through other remedies. *See* Minn.Stat. § 555.06 (1992) (the court may refuse to grant declaratory relief where such relief would not terminate the uncertainty or controversy giving rise to the proceeding). Because the bondholders' amended complaint sought equitable relief that could have been granted, we conclude Minn. Stat. § 373.06 is not applicable. Accordingly, we affirm the district court's refusal to dismiss the bondholders' claims against the county under this statute.

### II.

The bondholders contend the district court erred in dismissing their breach of contract claims for failure to state a claim upon which relief can be granted. We agree.

■■■ In reviewing a motion to dismiss, we need only determine whether the complaint sets forth a legally sufficient claim for which relief can be granted. *Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980) (quoting *Royal Realty Co. v. Levin,* 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955)).

> A claim is sufficient against a motion to dismiss * * * if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded.

*Franklin,* 265 Minn. at 395, 122 N.W.2d at 29. Whether a contract is ambiguous is a question of law. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982).

 Minnesota recognizes the contractual nature of bonds. *See Davies v. City of Minneapolis,* 316 N.W.2d 498, 504 (Minn. 1982). In analyzing a contract, we construe the contract as a whole and attempt to harmonize all of its clauses. *See Chergosky v. Crosstown Bell,* 463 N.W.2d 522, 525 (Minn. 1990). A contract is ambiguous when the language of the written document, by itself, is reasonably susceptible to more than one meaning. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990).

A. Claims against the county.

██ The bondholders contend the district court erred in dismissing their breach of contract claims against the county on the pleadings. We agree because we conclude the bond documents are ambiguous with respect to the county's duties concerning renewal of the letter of credit and whether the county's conduct constituted a breach of such duties.

First, Loan Agreement §§ 6.13 and 8.09 do not clearly define the county's duties. Although section 6.13 does not require the county to accept the banks' offer to renew the letter of credit, section 8.09 requires the county to consider the bondholders' best interests, and not its own, in making this decision. Moreover, it is undisputed that the purpose of obtaining the letter of credit was to provide security for the bonds for the benefit of the bondholders. We disagree with the county's argument that section 8.09 is merely a rule of interpretation. If the parties had intended section 8.09 to be a mere rule of interpretation, they would have placed it in Article I of the Loan Agreement, entitled "Definitions and Interpretation." Because the county's argument would require us to disregard the substance of section 8.09, we must reject it. *See Oster v. Medtronic, Inc.,* 428 N.W.2d 116, 119 (Minn.App. 1988) (each and every provision of a contract must be given effect if that can be done consistently and reasonably).

Second, because the bond documents contain separate optional and mandatory redemption provisions, we conclude the documents are ambiguous as to whether the county has the right to force a redemption by refusing to renew the letter of credit. Although termination of the letter of credit triggers a mandatory redemption under the bond documents, the county's refusal to renew the letter of credit effectively transforms this provision into an optional redemption provision. Because the mandatory and optional provisions appear in separate sections of the Loan Agreement, the documents are ambiguous as to whether the parties intended to provide the county with such an option.

Third, the bond documents are ambiguous because Loan Agreement § 4.07(f) indicates that it was HERC's and the banks' option, not the county's, to renew the letter of credit. Thus, the express language of the bond documents does not indicate that the parties intended to grant the county the option of nonrenewal.

Because the contract is ambiguous, we conclude the district court erred in dismissing the bondholders' breach of contract claims against the county on the pleadings. We therefore reverse the district court's dismissal of these claims and remand for further proceedings.

B. Claims against HERC.

██ The bondholders contend the district court erred in dismissing their breach of contract claims against HERC on the pleadings. We agree because we conclude the bond documents are ambiguous with respect to HERC's duties concerning renewal of the letter of credit and whether HERC's conduct constituted a breach of such duties.

First, section 8.09 requires HERC to act in the bondholders' best interests. Thus, the above analysis of section 8.09 applies equally to HERC.

Second, we reject HERC's contention that the bondholders cannot state a claim for breach of contract against HERC because HERC did nothing to prevent renewal of the letter of credit. In the lease agreement with USTC, HERC expressly agreed to use "their

reasonable best efforts whenever required to procure a renewal or extension of the Letter of Credit." Because the parties expressly consented to this language in the Amended Loan Agreement, this provision became an operational part of the bond documents and, therefore, defines HERC's duties. Whether HERC used its best efforts to procure renewal of the letter of credit cannot be determined by reference to the pleadings and the bond documents. Thus, we conclude the district court erred in dismissing the bondholders' breach of contract claims against HERC on the pleadings. We therefore reverse the district court's dismissal of these claims and remand for further proceedings.

### III.

The county and HERC contend the district court erred in allowing the bondholders to maintain their breach of implied covenant claim as an independent cause of action. The supreme court has not directly determined whether the implied covenant of good faith and fair dealing can constitute an independent cause of action. *Nordling v. Northern States Power*, 478 N.W.2d 498, 503 (Minn. 1991).

Because we reverse the trial court and reinstate the bondholders' breach of contract claims, we need not address this issue. In so holding, however, we note that Minnesota law recognizes that the implied covenant can supplement a breach of contract claim. *See Haase v. Stokely–Van Camp, Inc.*, 257 Minn. 7, 13, 99 N.W.2d 898, 902 (1959). Thus, the implied covenant serves " 'in aid and furtherance of other terms of the agreement of the parties.' " *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 819 (D.Minn.1989) (quoting *Murphy v. American Home Prod.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237–38, 448 N.E.2d 86, 91 (N.Y.1983)).

### DECISION

The district court properly refused to dismiss the bondholders' claims against the county for failure to comply with Minn.Stat. § 373.06 (1992). Because the contract at issue is ambiguous regarding appellants' duties concerning renewal of the letter of credit, the district court erred in dismissing the bond-

holders' breach of contract claims on the pleadings.