47 F.3d 1164
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ENVIRONMENTAL PRODUCTS CORPORATION, Plaintiff-Appellee,
v.
KING COMPANIES, INCORPORATED; RVM Leasing Corporation,
Defendants-Appellants.
 No. 94-1536.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1994.
Decided: Feb. 21, 1995.
 
 ARGUED: Craig David Diviney, DORSEY & WHITNEY, Minneapolis, MN, for Appellants. James R. Crassweller, DOHERTY, RUMBLE & BUTLER, P.A., St. Paul, Minnesota, for Appellee.
 ON BRIEF: Scott A. Benson, DORSEY & WHITNEY, Minneapolis, MN; C. Torrence Armstrong, Frederick P. Helm, MCGUIRE, WOODS, BATTLE & BOOTHE, Alexandria, VA, for Appellants. Deborah B. Hilke, DOHERTY, RUMBLE & BUTLER, P.A., St. Paul, MN; Grady C. Frank, Jr., HAZEL & THOMAS, P.C., Alexandria, VA, for Appellee.
 Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 This declaratory judgment action was removed to federal court under diversity jurisdiction. Appellee, Environmental Products Corporation (ENVIPCO), brought this action in the Virginia state courts to determine the scope of its required performance under a contract (the Agreement) between ENVIPCO and Appellants, King Companies, Inc. and RVM Leasing Corporation (King). King appeals the district court's summary judgment order in which the district court held that ENVIPCO's responsibilities under the Agreement were less onerous than King expected. For the reasons explained below, we affirm in part and reverse in part.
 
 I.
 
 2
 Many states require beverage retailers to charge an extra deposit on every can or bottle of soda they sell as a means of encouraging consumers to return the receptacle for recycling. New York, for instance, passed such a law in 1983 finding that "requiring a deposit on all beverage containers ... will provide a necessary incentive for the economically efficient and environmentally benign collection and recycling of such containers." N.Y. Environmental Conservation Law Sec. 27-1001 (McKinney 1994). In New York, when a consumer empties a bottle or can, she simply returns it to the retailer for a full refund of her deposit, and the retailer returns the container to a recycling center. Id. Sec. 27-1007. See generally, Jeffrey B. Wagenbach, The Bottle Bill: Progress and Prospects, 36 Syracuse L.Rev. 759 (1985).
 
 
 3
 To make this process easier for both retailers and consumers, ENVIPCO began to market Reverse Vending Machines (RVMs). Using laser technology, these machines allow the consumer to insert bottles and cans into the RVM which in turn computes and dispenses the appropriate refund. In 1983, after New York state passed its deposit law, ENVIPCO needed extra capital to expand its operation and distribute its machines into the Empire State. Therefore, in July 1983, ENVIPCO entered into the Agreement with King (which was subsequently amended in October 1983), in which King agreed to buy the machines that ENVIPCO designed and to lease them to retailers. ENVIPCO agreed to maintain the machines in good repair and also agreed to serve as King's exclusive remarketing agent for the RVMs after their initial leases expired. Under this arrangement, ENVIPCO received an influx of capital from King's purchases. King, on the other hand, received a steady flow of income throughout the term of the initial lease and had the potential for additional income through the remarketing of those machines not on lease.
 
 
 4
 By 1993, relations between ENVIPCO and King had soured. King filed a declaratory judgment action against ENVIPCO in the United States District Court for the District of Minnesota to determine whether the Agreement required it to sell back several RVMs to ENVIPCO under a repurchase provision in the Agreement. In the course of resolving this dispute in King's favor, the district court determined that the Agreement was "complete, integrated, and unambiguous." (J.A. 126.) As a result, the parol evidence rule applied and barred the use of any extrinsic evidence showing a contemporaneous or prior agreement. Id.
 
 
 5
 Following resolution of the Minnesota lawsuit in King's favor, ENVIPCO filed this action for declaratory relief in the Circuit Court of Fairfax County, Virginia. ENVIPCO sought to resolve other issues not settled in the Minnesota suit surrounding its right to repurchase certain machines and to settle certain conflicts arising from the Agreement. King removed the action to federal court under 28 U.S.C. Sec. 1441 (1988), and brought unsuccessful motions to dismiss and transfer. King then answered and counterclaimed for declaratory judgment and equitable relief. After discovery and on separate motions from both parties, the district court granted summary judgment in favor of ENVIPCO.
 
 
 6
 The district court found (1) that the Agreement allows ENVIPCO to decide, in its reasonable discretion, not to remarket machines because of their advanced age or run-down condition, and (2) that the Agreement only requires ENVIPCO to maintain King's machines for a period of five years. King appeals these rulings and asserts a separate evidentiary point of error.
 
 II.
 
 7
 We review a grant of summary judgment de novo. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir.1990). "Under Rule 56(c), summary judgment is proper 'if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). As a federal court sitting in diversity, we must apply the choice of law rules of the forum state--in this case, the Commonwealth of Virginia. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances. See Tate v. Hain, 25 S.E.2d 321, 324 (Va.1943). Therefore, because Sec. 7.3 of the Agreement explicitly provides a choice of law clause calling for the application of Minnesota law, we apply Minnesota law in our review. (J.A. 289.) With these principles in mind, we first review whether ENVIPCO must remarket all machines regardless of age or condition and then examine whether ENVIPCO's maintenance responsibilities under the Agreement extend beyond five years.
 
 A.
 
 8
 In its counterclaim for declaratory judgment, King argued that regardless of age or condition, the Agreement required ENVIPCO to remarket all of King's RVMs after their initial leases expired. The language of the Agreement states:
 
 
 9
 5.01 Buyer hereby appoints Seller as its exclusive Remarketing Agent for Equipment purchased by Buyer to (at Buyer's option): (a) sell or (b) re-lease (collectively "Remarket") such equipment at the termination of the Lease.
 
 
 10
 5.02 Seller shall act as Remarketing Agent for as long as Buyer owns any of Seller's Equipment, and shall make all such day-to-day decisions in the reasonable exercise of its judgment.
 
 
 11
 (J.A. 220.) Relying on the language in Sec. 5.02 that ENVIPCO "shall make all ... day-to-day decisions in the reasonable exercise of its judgment," the district court found that ENVIPCO could make a reasonable decision not to remarket certain RVMs solely because of their advanced age or dilapidated condition. (J.A. 82-83.)
 
 
 12
 The issue confronting us is straightforward. We must determine whether "ENVIPCO is obligated by the Agreement as amended to remarket all of [King's] reverse vending machines regardless of age [or condition]." (Defendants' Answer and Counterclaims, J.A. 43.) We turn first to the unambiguous language of the contract. " 'If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.' " Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir.1993) (quoting World-Wide Rights Ltd. v. Combe, Inc., 955 F.2d 242, 245 (4th Cir.1992)).
 
 
 13
 King points to the language in Sec. 5.02 and refers us to a plethora of provisions in the Agreement to buttress its argument that ENVIPCO has no discretion to decline to remarket any machines: Sec. 5.02 (ENVIPCO "shall act as Remarketing Agent for as long as [King] owns any of [ENVIPCO's] equipment") (J.A. 220); Sec. 6.09 (ENVIPCO must not "take steps to adversely impact the potential or the likelihood of obtaining a lease extension beyond the 60 month period") (J.A. 223); Sec. 5.04 (ENVIPCO shall remarket equipment "without discrimination against [King] in favor of other Third Party Purchasers") (J.A. 220); Sec. 6.02 (stating that ENVIPCO may upgrade the machines "but such fees shall be consistent with keeping the machine at a marketable price for remarketing purposes") (J.A. 222). We find that none of these provisions help us answer the question before us, for all of the provisions King cites deal with the long-term nature of ENVIPCO's remarketing responsibilities, but not a single one of these provisions discusses whether ENVIPCO must remarket every machine. Nothing in the Agreement requires ENVIPCO to remarket all machines regardless of age or condition.
 
 
 14
 On the other hand, Sec. 5.02 provides that ENVIPCO "shall make all ... day-to-day decisions in the reasonable exercise of its judgment." (J.A. 220.) To us, the import of this clause is very clear. Section 5.02 acknowledges that King must allow ENVIPCO to utilize its business expertise in this market--the expertise that prompted King to contract with ENVIPCO in the first place. The parties chose to give broad authority to ENVIPCO to control the "day-to-day" direction of its business--to require ENVIPCO to remarket every RVM, regardless of age or condition, would "render [Sec. 5.02] meaningless." See Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 526 (Minn.1990) ("Because of the presumption that parties intended the language used to have effect, we will attempt to avoid an interpretation of the contract that would render a provision meaningless.").
 
 
 15
 King complains that this interpretation "effectively neuter[s] all of ENVIPCO's remarketing obligations." Appellant's Brief at 9. On the contrary, our reading does not absolve ENVIPCO of its responsibility to remarket machines that should, in fact, be remarketed. As with all contracts, ENVIPCO has a duty to perform its responsibilities under the Agreement in good faith. Minn.Stat. Sec. 336.1-203 (1993) ("Every contract or duty within this chapter imposes an obligation of good faith in its performance ...."); id. Sec. 336.2-103 (" 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.") ENVIPCO must act in good faith when it declines to remarket a machine. We note that "[w]ith rare exception, the ... good faith requirements [are used] in aid and furtherance of the parties' agreement." Steven J. Burton, Good Faith in Articles 1 and 2 of the U.C.C.: The Practice View, 35 Wm & Mary L.Rev. 1533, 1534 (1994). Under the Agreement, ENVIPCO may not base its decision not to remarket an RVM on a desire to sell its own new machines over suitable older machines still owned by King. Similarly, ENVIPCO may not refuse to remarket machines that have become dilapidated due to its own malfeasance in not properly maintaining the machines under Sec. 3.03. As the district court correctly noted, "if [ENVIPCO] decides not to remarket a one year old machine that looks like new, [King] could certainly file suit for breach of contract alleging that the decision is not reasonable." (J.A. 83). The Agreement's requirement of reasonableness permeates ENVIPCO's dealings with King and mandates that ENVIPCO, in the course of reasonable business judgment, may decide that some RVMs are not worth remarketing. That decision, however, must be based solely on business considerations, not on any desire to absolve itself of its responsibilities under the Agreement.
 
 
 16
 We, therefore, affirm the district court's interpretation of Sec. 5.02 of the Agreement.
 
 B.
 
 17
 We disagree, however, with the district court's conclusion concerning ENVIPCO's responsibilities to maintain the RVMs under Sec. 3.03, and, therefore, we reverse that part of the district court's decision. The district court found that ENVIPCO's responsibility to maintain the RVMs only extended five years after the RVMs were in service. The Agreement explains ENVIPCO's basic responsibilities to maintain the machines in Sec. 3.03:
 
 
 18
 All items of Purchased Equipment shall be subject to Seller's maintenance agreement and will be maintained in accordance with its published specifications and in accordance with representations made by the Seller to any Purchaser or Lessee of the Equipment. Further, such maintenance services shall result in keeping the equipment at commercial levels of operation and acceptance so that equipment coming off lease is readily marketable without further expense to Buyer. (J.A. 218-19 (emphasis added)). Looking to Amendment 1 of the Agreement, which defines "Off Lease Equipment,"[1] the district court concluded that Sec. 3.03's use of the phrase "equipment coming off lease" referred to the definition of "Off Lease Equipment" in Amendment 1. As a result, the district court concluded that because the specific definition of "Off Lease Equipment" in Amendment 1 is "less than five years old," ENVIPCO's duty to maintain the machines for remarketing ends when the machines attain the age of five years. Our review of the Agreement leads us to conclude that its language and structure command a different result.
 
 
 19
 If the language of a contract is plain and unambiguous, our review is confined to its four corners. Under Minnesota law, "[a] contract is ambiguous when the language of the written document, by itself, is reasonably susceptible to more than one meaning." In re Hennepin Cty.1986 Recycling Bond Litigation, 517 N.W.2d 63, 67 (Minn. Ct.App.1994) (citing Trondson v. Janikula, 458 N.W.2d 679, 681 (Minn.1990)). As discussed above, we do not believe that Sec. 3.03 of the Agreement is "reasonably susceptible" to multiple meanings.
 
 
 20
 Rather, we find that the text of the agreement alone evinces the clear intent of the parties.[2]
 
 
 21
 We begin with the proposition that courts must allow the parties to a contract to define terms. "[P]arties, like Humpty Dumpty, may use words as they please. If they wish the symbols 'one Caterpillar D9G tractor' to mean '500 railroad cars full of watermelons', that's fine--provided parties share this weird meaning." TKO Equipment Co. v. C & G Coal Co., 863 F.2d 541, 545 (7th Cir.1988); see also Indianhead Truck Line, Inc. v. Hvidsten Transport Inc., 128 N.W.2d 334, 340-41 (Minn.1964) (noting that the parties' own definition of "final order" precludes employing a more technical definition). When parties make a conscious and obvious decision to define a term, we must respect that decision.
 
 
 22
 When the parties wrote, "[t]he term 'Off Lease Equipment' means Equipment which ..." (J.A. 287), they created a defined term for use throughout the Agreement. "Off Lease Equipment" functions as a noun, distinguished by the capitalization of the first letter of each word. In fact, the Agreement contemplates numerous defined terms--"Off Lease", "Remarket", "Retailer", "Agreement", "Purchased Equipment", etc.--and is careful to distinguish them by capitalizing the first letter of each word and by according each term a consistent grammatical function. For instance, the term "Off Lease Equipment" functions as a noun and with the proper capitalization in both Sec. 5.04 ("Off Lease Equipment shall be remarketed by the Seller without discrimination") and Sec. 5.05 ("In the event Seller fails to remarket any Off Lease Equipment for a period of three (3) consecutive months.") (J.A. 286).
 
 
 23
 Just as surely as we must acknowledge the will of the parties in using defined terms, we must also recognize when they do not employ those terms. The latter situation confronts us now. Section 3.03 requires ENVIPCO to maintain machines so that they are "at commercial levels of operation and acceptance so that equipment coming off lease is readily marketable without further expense to" King. (J.A. 218-19). ENVIPCO argues, and the district court found, that this provision's use of the words "off lease" refers to the official definition of "Off Lease Equipment" in Amendment 1. From a review of the plain language of Sec. 3.03, we cannot accept this argument.
 
 
 24
 To begin with, in Sec. 3.03 the term "off lease" is not capitalized nor is it set off with quotation marks. We find it very peculiar that this is done in every other section referring to "Off Lease Equipment." Additionally, the grammatical usage of the term in Sec. 3.03 is at odds with its function as a defined term. As a defined term, the phrase "Off Lease Equipment" is a noun, yet, in Sec. 3.03, the phrase "coming off lease" forms part of an entire adjectival phrase. We note that if the parties had intended to incorporate the defined term "Off Lease Equipment" into Sec. 3.03, they could have drafted Sec. 3.03 to use the normal defined term in a simple, straightforward, grammatically consistent way. For instance, they could have written that ENVIPCO "must maintain the machines in commercially operable condition so that equipment is readily marketable when it becomes'Off Lease Equipment.' " We believe, however, borrowing a phrase from the New York Court of Appeals, that "[h]ad that been their intention, surely no problem of draftsmanship would have stood in the way of its being spelled out." George Backer Management Corp. v. Acme Quilting Co., 385 N.E.2d 1062, 1065 (N.Y.1978).
 
 
 25
 For these reasons, we find from the plain text of the Agreement that the district court erred when it determined that ENVIPCO must only maintain the machines until they are five years old. Instead, we conclude that the agreement places a duty on ENVIPCO to maintain the machines indefinitely so that machines are commercially operable until their leases terminate. It may seem contradictory that, on the one hand, the Agreement requires ENVIPCO to maintain all of King's machines until they come off lease under Sec. 3.03, yet, on the other, it allows ENVIPCO to decline to remarket dilapidated machines under Sec. 5.02. This reading may seem to give ENVIPCO a license to decide not to maintain a machine if it eventually does not want to remarket it. Because "all contract provisions should be harmonized whenever possible," American Warehouse and Distributing v. Michael Ede Management, 414 N.W.2d 554, 557 (Minn. Ct.App.1987), we want to make clear that while the Agreement imposes on ENVIPCO a duty to maintain the machines in commercially operable condition, it does not impose a duty to prevent normal wear and tear. It certainly would be unreasonable to expect ENVIPCO to ensure that a ten year old machine is as marketable as a brand new one. ENVIPCO's duty is to maintain the machines in normal working order so that they are as remarketable as any comparable machine, taking into account normal wear and tear and depreciation.
 
 III.
 
 26
 Finally, King asserts that the district court erroneously relied on issues of profitability to decide that ENVIPCO need not remarket all of King's previously leased RVMs. During discovery, King attempted to obtain information relating to ENVIPCO's profitability, earnings, and losses. ENVIPCO objected to this request. The district court sustained ENVIPCO's objection and barred further discovery on this issue based on ENVIPCO's assurances that its profitability would not be an issue. (J.A. 69.) Yet, in its final order on the issue of ENVIPCO's duty to remarket, the district court explicitly held that it would not be reasonable for the Agreement to "require ENVIPCO to continu[e] marketing old machines knowing that if it does so it will ultimately be driven out of the market by the competition." (J.A. 82-83.). Therefore, the district court decided that Sec. 5.02 must allow ENVIPCO to decline remarketing some machines due to their age or condition. King argues that this reliance on ENVIPCO's competitiveness in the RVM market directly contradicts the district court's earlier order barring discovery of profitability. King contends that we should remand the case for more discovery on the issue of profitability so that it could obtain information showing that ENVIPCO's profits would not be hindered by remarketing older RVMs. We review this question of law de novo. Miller, 906 F.2d at 974.
 
 
 27
 In essence, King confuses profitability with marketability. Profitability involves how much money ENVIPCO is making. The district court's discovery order prohibited King from obtaining documents that reflected ENVIPCO's actual income, losses, profits, and debts, i.e. ENVIPCO's tax returns. Nothing in the court's order prevented King from obtaining information about ENVIPCO's competitors, the state of the RVM sales market, or any other data concerning ENVIPCO's strategy for selling RVMs. The district court based its order on these concerns of marketability. The concept of profitability, involving ENVIPCO's dollar and cent bottom line, was not a factor in the district court's decision. Therefore, we find that King's final assignment of error is without merit.
 
 IV.
 
 28
 For the foregoing reasons, we affirm the judgment of the district court as to its interpretation of Sec. 5.02 of the Agreement and reverse as to Sec. 3.03. We also find that the district court properly considered the marketability of King's RVMs in its consideration of Sec. 5.02. Therefore, the judgment below is accordingly affirmed in part and reversed in part.
 
 
 29
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 [1]
 Amendment 1, Sec. 6.16 provides that
 The term "Off Lease Equipment" means Equipment which:
 (a) Has been On Lease Equipment previously but which is no longer covered by a Lease due to the expiration of the Lease term which had formerly been in effect or due to a default by the Retailer and the subsequent termination of the Lease by the Company; and
 (b) Is less than five years old (determined by reference to the date originally placed in service) and is in suitable condition (both with respect to operation and with respect to appearance subject to Seller's obligation under Section 6.02 of the Agreement) for placement in a retail or vending location, and
 (c) Remains the property of the Company.
 (J.A. at 287) (emphasis added). This amendment, adopted in October of 1983, replaced a definition of "Off Lease Equipment" found in the original version of the Agreement.
 
 
 [2]
 Because we resolve this case based on the language of the document, we need not address ENVIPCO's argument that collateral estoppel prevents the introduction of parol evidence to interpret the Agreement