JOHN BOYD and Others v. MORRIS L. HALLOWELL, Jr., and Others.[1]

February 4, 1895.

No. 9074.

### Agreement to Convey—Title—Rescission.

When a party has contracted to convey, or to cause to be conveyed, certain real estate to another, in satisfaction of a debt, the title to be made satisfactory to the attorneys of the latter, or the contract to be null and void, the attorneys cannot be permitted, in the absence of a substantial defect in the title, to abruptly declare the contract at an end, after the party who is to convey, or cause to be conveyed, has credited large sums of money upon notes held by him, and has expended quite an amount in obtaining deeds and other instruments demanded by the attorneys, and after there has been performance to such an extent that canceling the contract will work irretrievable injury, and after the attorneys have made requisition for deeds and other instruments to complete the title, which have been furnished, and have, at least by implication, stated that if such deeds and instruments were forthcoming they would be satisfied with the title.

Action in the district court for Hennepin county against members of the firm of M. L. Hallowell, Jr., & Co., and Samuel P. Snider, upon four promissory notes made by the firm and indorsed by Snider. The nature of the defense is stated in the opinion. The an-

[1] Reported in 62 N. W. 125.

v. 60 M.—15

swer alleged a verbal agreement about December 28, 1891, by which Snider agreed to convey to John Boyd a certain lot in Minneapolis, called the "Hart Property," subject to an incumbrance of $7,000, and a certain other parcel of land, called the "Johnson Property," subject to an incumbrance of $9,000; that on January 2, 1892, at the request of Boyd, Snider signed a written memorandum of said verbal agreement, by which Snider agreed "to convey or cause to be conveyed" to Boyd the two parcels described; that thereafter the agreement was modified verbally, in that Boyd agreed to furnish Snider with $9,000 to pay off the incumbrance upon the Johnson property, and Snider agreed to have all incumbrances upon that property released prior to the transfer; that the option to declare the agreement void was not exercised by the plaintiffs; that the delay in carrying out the agreement was caused by the plaintiffs and their attorneys; and that Snider expended $10,000 in causing to be executed the conveyance of the Johnson property to Boyd subject to the incumbrance of $9,000. The amended reply alleged that, at the time of making the written contract, plaintiffs were informed that the interest of Johnson in the second parcel was in fact that of a mortgagee, and the conveyance to him was in fact a mortgage; that unless plaintiffs carry out their part of the agreement, and cancel said notes, defendants will be irretrievably injured, and will have no adequate remedy at law.

After a trial before Hooker, J., a jury being waived, the court ordered judgment for the defendants, finding as a fact that after all the instruments which Ewing & Ewing required to complete the title had been properly furnished within a reasonable time, when the same were tendered to them, and after Snyder had in all respects completed the written contract required by them and by John Boyd, they unreasonably refused to approve the perfect title, and refused to go on with the contract. From an order denying a motion for a new trial, which was heard and decided by Russell, J., because of the death of Hooker, J., plaintiffs appealed. Affirmed.

*Morphy, Ewing, Gilbert & Ewing,* for appellants.

*Cross, Carleton & Cross,* for respondents.

COLLINS, J. This was an action to recover upon certain promissory notes. The defense was that, after a former action had been

brought on the notes, negotiations were entered into which resulted in the execution of a written contract under which the action was dismissed, and by which defendant Snider undertook and agreed to convey, or cause to be conveyed, to one of the plaintiffs, John Boyd, two pieces of real estate in the city of Minneapolis (one known as the "Hart," the other as the "Johnson," property) by good title, free and clear from all incumbrances, excepting an existing mortgage and taxes due on the Hart property, not to exceed $7,000, and an existing mortgage and taxes due on the Johnson property, not to exceed $9,000. The title was to be placed in Boyd, except as to incumbrances, within 15 days, and was to be made satisfactory to Ewing & Ewing, attorneys. If this was not done, the contract was, at Boyd's option, to be null and void. Provision was made for reconveyances in case deeds were made, and the title proved unsatisfactory. On Snider's compliance with the terms of the written contract, the notes in question were to be canceled and surrendered. The answer, with much detail and considerable verbiage, alleges Snider's compliance with the terms of his contract, and plaintiffs' refusal to surrender the notes. A trial by the court resulted in an order for judgment in defendants' favor, and the appeal is from an order denying a new trial.

It would require considerable time to state the facts in detail, but they are very fully and fairly set forth in the briefs of the respective counsel. Except as to one or two matters, there is little in dispute. The title to the Hart property was promptly placed in Boyd's name, and was satisfactory to plaintiffs' attorneys. Plaintiffs paid the $7,000 mentioned in the contract as the amount of the incumbrance thereon, redeeming from a mortgage foreclosure sale, took possession of the premises, collected rents, and exercised other acts of ownership. Except as the acts of the plaintiffs in relation to this property have a bearing on what transpired relative to the Johnson land, it may be excluded from further consideration, for the litigation arises wholly out of the state of the title to the Johnson tract.

It is evident from the language of the contract that it was not agreed, nor was it essential, that the title to either piece of land should come through Snider directly; and from the evidence it appears that prior to the signing of the contract it was known to

plaintiffs' representatives in the entire transaction, their attorneys, that the title to the Johnson property was of record in one J. W. Johnson, but that Snider, on paying $9,000, and perhaps performing other acts, could obtain a conveyance to Boyd. The supposition may have been that Johnson held the legal title only, for, before the formal execution and delivery of the contract, Snider executed and delivered a quitclaim deed of the land in which Boyd was named as grantee. But later on, and down to about the time plaintiffs' attorneys declared the contract void for nonperformance, they seem to have regarded Johnson as the absolute owner. There is some dispute whether, as claimed by Snider, there was an agreement, after the signing of the contract, whereby it was modified by parol to the effect that Boyd was presently to pay the incumbrance of $9,000 on the Johnson property, called a "mortgage" in the contract, but we do not quite see how this is material. Snider could comply with the terms of his part of the agreement by placing the title in Boyd, subject to the amount of the incumbrance for $9,000. If Johnson was nothing but a mortgagee, and Snider the real owner of the property, subject to Johnson's claim, the parties understanding the state of the record title, as they undoubtedly did, Snider's quitclaim deed put Boyd in position to redeem; and this could only be done by payment of the $9,000 in cash, unless Johnson consented to some other arrangement. But, immediately upon the execution of the contract, plaintiffs' attorneys requested Snider to procure a conveyance of the property from Johnson to Boyd, and agreed to have the $9,000 necessary to be paid by the latter, in order to free the property of incumbrance, ready when, or soon after, the deed came. Snider procured a deed from Johnson, the same being executed in a distant state; and it was in the hands of his attorneys, ready for delivery to Boyd, January 20. To obtain the deed, Snider testified that he had to give absolute credit, in the sum of $10,000, on the notes of one Boardman, which he held; the latter having, or claiming to have, an interest in the deeded property. The plaintiffs' attorneys were informed that the deed was ready for delivery on the payment of $9,000. They called upon the parties having possession, examined it, and pronounced it satisfactory in form. They then attempted to negotiate for Boyd a loan on the property for money enough to take up the Johnson deed. After this, in Feb-

ruary, at Snider's request, and at his expense, they procured an abstract of title, but did not finish their examination of it until about March 1. They then reported to Snider's attorneys the result of their examination and investigation of the title; requesting that certain things be done, and instruments obtained, in order to make the title satisfactory to them. Diligence seems to have been used in performing these acts, and in obtaining these instruments, and by April 23 the request of plaintiffs' attorneys had been complied with. They contend that the contract was declared null and void, and that Snider was so informed on April 12; but this was in issue at the trial, and the court found that there was no such declaration until May 4, at which time, it is claimed, Snider tendered full performance. It may be of no real importance just when the contract was declared at an end, but, from the evidence, it seems clear that at the interview held between the attorneys on April 12 the plaintiffs' attorneys complained more of the delay than of any alleged defect of title which could not readily be cured. It is also evident that the latter considered further steps necessary, and hunted up Snider, May 4, for the purpose, as one of them testified, of "fully rescinding the contract."

With these facts, we think the case an easy one to determine, and to depend almost wholly upon the construction to be placed on the acts of the attorneys who, according to the contract, were to be arbiters of the title. That they regarded Johnson as having absolute title to the land is manifested by their acts. At no time during the four months which passed between the day of the contract and the day plaintiffs' attorneys exercised Boyd's right of option— nor at that time, even—did they attach any importance to the quit-claim deed by which Sarah L. Boardman and her husband conveyed the land to Snider and F. H. Boardman, executed long after Johnson went into possession, and given, according to its terms, to secure and indemnify the latter two persons as indorsers upon promissory notes, said deed being a mortgage in fact. But once was it mentioned, and then plaintiffs' attorneys conceded that it cut no figure in the title, although informed that a quitclaim deed could easily be had from F. H. Boardman to supplement the one already executed by Snider. If they really regarded the record defective because of the first-mentioned instrument, they were, in good faith,

bound to say so.  This is also true with reference to the judgments which it is claimed were docketed against Snider between the day plaintiffs' attorneys reported on the title, made requisitions as to certain supposed impediments, and by implication, at least, stated that the title would be satisfactory, if the required acts were performed, and instruments obtained, by May 4.  Even if these judgments were actually in the way of a clear title,—and of this there was scarcely a possibility,—Snider or his attorneys should have been notified, and afforded a reasonable opportunity to remove the same.  Plaintiffs' attorneys had repeatedly waived the condition as to time by delay on their part, and by consenting to delay on the part of Snider.  They were not in position, and, in the absence of a substantial defect in title, cannot be sustained in their attempt, arbitrarily, abruptly, and unreasonably to declare the contract null, after they had practically said that they were satisfied with the title, except as to certain deeds and instruments for which they made requisition, which requisition was promptly honored; after Snider had credited large sums of money upon notes held by him, and had expended quite an amount in obtaining deeds and other instruments demanded by them, and after there had been performance to such an extent that annulling the contract would work irretrievable injury to him.  We recognize the rule that where parties select an arbiter or umpire of title, and he exercises his best judgment, in good faith, and with an honest intention of determining the question as to the validity of the title, his conclusion is final and binding.  The courts have no power to revise it.  But this case is not governed by the rule.

Order affirmed.