**WHITE STONE PARTNERS, LP, Plaintiff,**

v.

**PIPER JAFFRAY COMPANIES, INC., et al., Defendants.**

Civil No. 4–96 841.

United States District Court, D. Minnesota, Fourth Division.

Sept. 30, 1997.

Gavin S. Wilkinson, Reinhardt & Anderson, St. Paul, MN, for Plaintiff.

Nancy A. Wiltgen, Leonard Street & Deinard, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

TUNHEIM, District Judge.

This case involves a dispute resulting from a failed real estate transaction. The plaintiff is a New York limited partnership which sought financing for the purchase of a trailer park. Plaintiff's claims arise from the termination of a financing agreement plaintiff entered into with defendants American Strategic Income Portfolio, Inc.—III ("American Strategic") and Holliday Fenoglio, Inc. ("Holliday"). Defendant Piper Capital Management, Inc. ("Piper") manages American Strategic. The parties memorialized their agreement in a Commitment Letter dated November 10, 1994. In the Commitment Letter, defendant American Strategic promised to lend plaintiff $1 million to finance the purchase of the White Stone Village Mobile Home Park in Guilderland, New York,

This matter is before the Court on plaintiff White Stone Partners' objection to the Report and Recommendation of the United States Magistrate Judge Raymond L. Erickson dated August 11, 1997. The Magistrate Judge recommends that defendants' motion to dismiss plaintiff's Complaint be granted. Plaintiff objects to that portion of the Report and Recommendation which recommends that its claim for breach of contract be dismissed as to defendants Piper Management and American Strategic. Plaintiff does not object to the recommendation of dismissal of its claim for tortious breach of contract, or of dismissal of all claims against defendant Holliday Fenoglio, Inc.

The Court reviews *de novo* the objection to the Report and Recommendation on this dispositive pretrial matter, pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons stated below, the Court rejects that aspect of the Report and Recommendation to which plaintiff objects, and adopts those aspects of the Report and Recommendation to which plaintiff did not object.

## I. Legal Standard

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the Court presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The complaint must be viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in plaintiff's favor. *Id.* The court will dismiss a complaint, however, when it appears the plaintiff cannot prove any set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## II. Facts

The facts relevant to the motion to dismiss are uncomplicated. Two provisions of the

Commitment Letter are at issue. The first provision states:

> This commitment is *subject to* receipt of an acceptable MAI appraisal and Phase I environmental survey. Such reports must be *acceptable to Purchaser in its sole discretion.*

(Emphasis added.) The Commitment Letter also provides that:

> Purchaser's obligations thereunder shall terminate at the option of purchaser if for any reason the closing does not occur on or before December 16, 1994 ... in such event, the Commitment shall be null and void as to all parties....

According to the Complaint, at the time the parties entered into the November 10, 1994 Commitment Letter, all of the defendants were aware that the property was within one-eighth of a mile of the Albany City Landfill. All defendants were also aware that plaintiff had received an environmental assessment of the property which did not identify any environmental problems. Defendants, however, reserved the right in the Commitment Letter to obtain an additional environmental assessment of the property. The assessment was completed by defendants' chosen environmental consultant on December 12, 1994. The assessment did not note any environmental problems.

According to plaintiff, all parties agreed on approximately December 6, 1994, that the closing date would be rescheduled to December 19, 1994. Plaintiff alleges that it continued to carry out its duties under the Commitment Letter and was ready to close on the loan when, on December 16, 1994, American Strategic terminated the commitment. American Strategic's letter stated that the reason for terminating the contract was "because it [was] not satisfied with the findings of the environmental survey," and "in addition, the loan closing did not occur on or before the Commitment Termination Date of December 16, 1994." Plaintiff alleges that as a result of defendants' termination of the commitment, the seller of the White Stone Village Home Park refused to carry out the sale of the property to plaintiff, and plaintiff suffered damages.

In its complaint, plaintiff asserts that defendants terminated the Commitment Letter in bad faith by invoking the termination clauses dishonestly According to plaintiff's memorandum of law in support of its breach of contract claim, defendants no longer found the deal to be economically attractive because they needed cash to pay dividends. Although plaintiff did not plead these facts specifically, plaintiff has alleged facts which support an inference that defendants invoked the escape cause dishonestly. Plaintiff alleges that no negative information was revealed by the environmental assessments which were performed in accordance with the agreement;[1] and that all parties agreed to an extension of the December 16, 1994 deadline for closing. If the Court accepts these allegations as true, which it must for purposes of this motion, the inference can be drawn that defendants' termination because it found the environmental assessment unacceptable and because the loan failed to close by December 16, 1994, was in bad faith because defendants invoked these escape clauses as a pretext for other reasons which were not part of the parties agreement regarding termination.

## III. Analysis

Given these facts and inferences, the Court must determine whether plaintiff states a claim for breach of contract. Plaintiff alleges that bad faith termination of the Commitment Letter is a breach of an implied covenant of good faith and fair dealing. The parties do not dispute the existence of a contract and agree that the express language of the escape clause was unambiguous.

### A. The implied covenant of good faith and fair dealing.

The Uniform Commercial Code and the Restatement (Second) of Contracts state that every contract imposes an obligation of good

---

1. Defendants insist that they terminated the contract due to dissatisfaction with the environmental assessments, but have not stated any reason for their dissatisfaction. The footnote to defendants' assertion that they were not satisfied with the report refers the Court to defendants' termination letter in which they state simply that the report is unsatisfactory.

laith in performance and enforcement. *See* U.C.C. § 1–203; *Restatement (Second) of Contracts* § 205. The term "good faith" is generally defined as "honesty in fact in the conduct or transaction concerned." Minn. Stat. § 336.1–201(19); Uniform Commercial Code § 1–201(19). This definition refers to "subjective" rather than "objective" good faith. Minn.Stat. § 336.1–201(19) cmt. According to the Restatement, good faith performance of a contract includes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes the variety of types of conduct characterized as involving "bad faith." *Restatement (Second) of Contracts* § 205 cmt. a; *see also Tymshare, Inc. v. Covell,* 727 F.2d 1145, 1153 (D.C.Cir.1984) ("doctrine of good faith performance is a means of finding within a contract an implied obligation not to engage in a particular form of conduct which, in the case at hand, constitutes "bad faith."). Among the types of bad faith recognized in judicial decisions are evasion of the spirit of the bargain and abuse of a power to specify terms. *Restatement (Second) of Contracts* § 205 cmt. d.

Without an implied covenant of good faith, an agreement vesting complete discretion to invoke an escape clause in one party may be illusory. As the Eighth Circuit stated in *C.R.I., Inc. v. Watson,* 608 F.2d 1137 (8th Cir.1979):

> [I]t is reasonable to assume the parties expected [the defendant] had committed himself to "Something." Moreover, a promise to act in good faith and reasonably in bringing the condition about, in accepting or rejecting the ... proposal is necessarily implied. Otherwise, [defendant's] promise would have been conditioned upon the future happening of an event entirely within his control, and therefore illusory.

*Id.* (applying Minnesota law and citing IA Corbin, *A Comprehensive Treatise on the Working Rules of Contract Law* §§ 149, 163, 165 (1963)). The term "acceptance" in an

enforceable bilateral contract "cannot mean privilege to repudiate solely on whim, but excuse for non-performance to be exercised in good faith and honest judgment." *C.R.I.,* 608 F.2d at 1137; *see also* 3A Corbin on Contracts § 644 (1960) (citing case holding contract was not illusory although conditional on finding "satisfactory" tenants because determination had to be made by exercise of honest judgment in good faith, and not based upon whim, caprice, or a belated opinion that the deal was not worth the agreed-upon price).

The issue in the present case is whether the implied covenant of good faith applies to the escape clause granting defendants "sole discretion" to accept or reject the environmental assessment. It is possible to draft a contract to reflect the parties' intent that decisions will be left absolutely to the uncontrolled discretion of one of the parties and "in such a case the issue of good faith is irrelevant." *Tymshare,* 727 F.2d at 1153. Many courts have held, for example, that the implied covenant may not be applied to limit the exercise of a clear contractual provision allowing termination without cause. *See Taylor Equip., Inc. v. John Deere Co.,* 98 F.3d 1028, 1032 (8th Cir.1996) (citing cases), *cert. denied,* —— U.S. ——, 117 S.Ct. 1553, 137 L.Ed.2d 702 (1997).

## B. Minnesota law and the implied covenant of good faith and fair dealing.

A federal court sitting in a diversity action applies the substantive law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Minnesota law implies a covenant of good faith and fair dealing into every contract. *See* Minn. Stat. § 336.1–203. *See In re Hennepin County 1986 Recycling Bond Litigation,* 540 N.W.2d 494, 502 (Minn.1995) (citing *Restatement (Second) of Contracts* § 205). The covenant requires that one party not "unjustifiably hinder" the other party's performance of the contract.[2] The implied covenant of good

---

**2.** Some federal courts applying Minnesota law have stated that there can be no breach of the implied duty of good faith and fair dealing under Minnesota law unless "a party's actions make it impossible for the other party to perform the

contract." *See H Enterprises Int'l, Inc. v. Gen'l Elect. Capital Corp.,* 833 F.Supp. 1405, 1420 (D.Minn.1993); *Burnette Techno–Metrics, Inc. v. TSI, Inc.,* 44 F.3d 641 (8th Cir.1994). These cases both cite to a Minnesota Court of Appeals

faith and fair dealing extends only to actions within the scope of the underlying contract. *Id.*

■ Although the Minnesota Supreme Court has not explicitly so held, it is this Court's judgment that the Minnesota Supreme Court would require a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save a contract from being held to be illusory. *See Farnsworth on Contracts* § 7.17 at 370 (1996 Supp.) (courts often supply a term in such circumstances). The Minnesota Supreme Court applied a good faith standard, without analysis, in a case in which the plaintiff alleged that defendant's exercise of a term granting the defendant discretion was pretextual. *See 451 Corp. v. Pension System,* 310 N.W.2d 922 (Minn. 1981). In *451 Corp.,* an agreement to lend money was subject to "approval of the documents as to legality and form by the Office of the Corporation Counsel." Defendant cancelled the contract, invoking this term. The plaintiff contended defendants cancelled the agreement, not due to problems with legality or form, but rather because they had subsequently determined it was a "bad deal." *Id.* at 925. Although it rejected this argument as a fact issue decided adversely to the plaintiff by the trial court, the Supreme Court did state that the Office of Corporation Counsel was required to "exercise its best judgment in a reasonable manner, in good faith and with honest intent as to whether the loan agreement was legal." *Id.* at 925 (citing *Boyd v. Hallowell,* 60 Minn. 225, 62 N.W. 125, 127 (1895)).

■ In an unpublished decision, the Minnesota Court of Appeals explicitly held that a condition of satisfaction giving the defendant sole discretion to determine plaintiff's creditworthiness was "enforceable because the rejection of creditworthiness must be in good faith." *Olson v. Farm Credit Bank,* 1993 WL 3838 (Minn. Ct.App. Jan 12, 1993) (citing *Restatement (Second) of Contracts* § 228 (1979) and *Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625, 626–27 (1958)). Reading these cases together, the court concludes that Minnesota courts would examine contracts that grant one party complete discretion with respect to a particular term on a case-by-case basis to determine if the contract is illusory unless an implied covenant of good faith is applied.

### C. Federal court decisions on the implied covenant of good faith.

The Magistrate Judge found that the parties' agreement that the express language of the contract was unambiguous precluded a finding that the implied covenant of good faith was relevant. This Court finds the comments of then-Judge Scalia in *Tymshare,* however, to be persuasive. Writing for the D.C. Circuit, he stated:

> the trick is to tell when a contract has been so drawn [to grant one party absolute discretion].... The mere recitation of an expressed power is not always the test.... [T]o say that every expressly conferred contractual power is of this nature is virtually to read the doctrine of good faith (or of implied contractual obligations and limitations) out of existence.

*Tymshare,* 727 F.2d at 1153. In *Tymshare,* the D.C. Circuit held that the phrase "sole discretion" "is not necessarily the equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable.'" *Id.* The court concluded that the reasonably understood effect of an expansive modifier such as "sole" varies from case to case depending upon the nature of the power at issue and that "sole discretion" cannot reasonably be read to confer discretion which may be used for reasons unrelated to the grant of discretion, such as

---

decision, *Am. Warehousing and Distrib., Inc. v. Michael Ede Mgmt. Inc.,* 414 N.W.2d 554 (Minn. Ct.App.1987), as authority for this proposition.

This Court does not read *American Warehousing* as holding that a party claiming breach of an implied covenant of good faith and fair dealing may only state a claim if it alleges that the other party made it impossible to perform the contract.

The Minnesota Court of Appeals simply stated that the implied covenant of good faith and fair dealing in every non-sales contract requires that a party not make it impossible for the other party to perform the contract. *Id.* at 557. It does not state that this is the only behavior prohibited by the implied covenant of good faith and fair dealing.

the desire to deprive the other party of the benefit of the agreement. *Id.* at 1154.

The Court in *Tymshare* suggests that the proper inquiry is what was reasonably understood by the parties regarding the discretion granted in the agreement and whether the actions alleged were implicitly envisioned by the contract. As the Eighth Circuit recently stated, "the purpose of the implied covenant is to honor the parties' justified expectations." *Taylor Equip.*, 98 F.3d at 1032. Accordingly, the issue in this case is whether the parties intended that defendants have discretion to terminate the contract pursuant to the environmental assessment escape clause because it no longer wanted to close on the loan for other reasons.

The Eighth Circuit has considered the issue of whether a specific provision granting discretion to one party is subject to the implied covenant of good faith and fair dealing. In *Taylor Equip.*, the Eighth Circuit decided an appeal from a judgment for a plaintiff who alleged breach of an implied covenant of good faith and fair dealing arising out of a manufacturer's refusal to consent to a dealer's proposed assignment of a dealership agreement. The plaintiff in *Taylor Equip.* alleged that the refusal to consent to the assignment was a pretext to further a secret plan to eliminate small dealers.

Applying South Dakota law, which implies a covenant of good faith and fair dealing into every contract, the court discussed two lines of cases. It noted that some courts have been reluctant to apply the implied covenant to block a party's exercise of its express contractual right to withhold consent to assignments. *Taylor Equip.*, 98 F.3d at 1032. The court also noted another line of cases, however, in which courts imposed a duty on the party granted such a contractual right to avoid invoking such discretion dishonestly to achieve a purpose contrary to that for which the contract was made. The implied covenant would allow a party to exercise its discretion in good faith but unreasonably, but it would not allow the party to a contract to dishonestly withhold approval. *Id.* at 1033. The court did not decide which line of cases the South Dakota Supreme Court would adopt, but held that the defendant was entitled to judgment as a matter of law under either interpretation of the implied covenant. *Id.* at 1024.

Other circuits have used the standard set out in *Tymshare* to determine whether an implied duty of good faith placed limitations upon the discretion of one party to a contract.[3] The Tenth Circuit has also held that the degree of discretion allowed by the contract determines whether the implied covenant of good faith is read into the contract. The court stated, "we are convinced that an express power would preclude the requirements of good faith if the power leaves absolute and uncontrolled discretion to exercise the power in one of the parties and if the other party can have no reasonable expectation of any implied protection from the powers exercised other that procedural notice." *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1268 (10th Cir.1988).

The court's analysis in *Big Horn Coal* demonstrates that the need for an implied requirement of good faith in contracts vesting unfettered discretion in one party is grounded in the concept of illusory contracts. The court notes the "equitable analysis" that flows from Uniform Commercial Code §§ 1–203 and 1–208 (requiring good faith in exercising acceleration clauses) and concludes

---

**3.** In *Riggs Nat'l Bank v. Linch*, 36 F.3d 370 (4th Cir.1994), the Fourth Circuit distinguished *Tymshare*. In *Riggs*, the plaintiff borrowers entered into an agreement with a bank that stated the bank had "sole discretion" to set its own prime rate subject to the requirement that the interest rate would never exceed 15 percent. The plaintiffs argued that an implied covenant of good faith required the bank to adjust its interest rate in accordance with other lenders.

The court distinguished *Tymshare* on the grounds that the bank's discretion to set the interest rate charged was not "unfettered" due to the cap on the rate the bank could charge, and the agreement therefore did not grant unlimited discretion to one party to determine the extent of the other party's contractual obligations. *Id.* at 373. The court found that under the unambiguous terms of the note, the borrowers could not have had a reasonable expectation that *Riggs'* discretion would be limited in the manner they alleged, and that the contract would not have been illusory without the implied covenant because there was adequate consideration to support *Riggs'* bargained-for discretion. *Id.*

that "where a contract provision is exercisable only at some discretion of one of the parties, and expectations are created by the contract, good faith limitations are applicable to protect the non-exercising party from unexpected invocation of the option." *Id.* at 1269 n. 15. The court held That the good faith limitation on one party's sole discretion is the reasonable expectation that the provision will be exercised only if that party honestly believes the term applies. *Id.* at 1269.

In determining whether the concept of good faith was relevant to a provision allowing a power company to reduce its purchase obligations for environmental reasons, the court stated:

A covenant to act in good faith ... is routinely implied when a particular contract provision is left open so as to allow one of the parties to invoke the provision at his discretion. A discretionary provision that ordinarily has good faith concepts applied to aid in its interpretation is a satisfaction provision. In such cases, the parties reasonably expect that the buyer will reject the goods only if he is truly dissatisfied with quality and not for some ulterior reason. In such cases, courts have examined motive evidence when deciding whether the provision was invoked within the implied good faith expectations of the parties.

*Id.* at 1267 (citations omitted).

### D. Plaintiff's claim.

■ The Court now turns to applying these principles to the instant case to determine how Minnesota courts would view the issues at hand. The Court has determined that a Minnesota court would imply a requirement of good faith into the provision vesting in defendants the sole discretion to determine the acceptability of the environmental survey. The Minnesota appellate courts in *451 Corp. and Olson v. Farm Credit,* found a condition of satisfaction and a "sole discretion" provision to be subject to good faith limitations. This case is also analogous to the persuasive opinion of the D.C. Circuit in *Tymshare* which many other courts have followed. As in *Tymshare,* considering the parties' intent, "it is simply not

likely that the parties had in mind a power quite as absolute as [defendant] suggests." Assuming plaintiff's allegations are true, it is unlikely that plaintiff would have agreed to a contract which defendants could terminate for any reason or no reason simply by expressing dishonest displeasure with the environmental survey and invoking the escape clause.

There remains an issue regarding whether an objective or subjective standard should apply to the question of whether defendants acted with good faith in invoking the termination clause. The Minnesota U.C.C. defines good faith as honesty in fact; the comment to the Minnesota code indicates that this imposes a subjective standard for measuring good faith. This standard would comport with other courts' approaches. *See Taylor,* 98 F.3d at 1033–34 (defendant would be liable if it dishonestly withheld approval, but not if its decision was simply unreasonable); *Morin Bldg. Prod. Co. v. Baystone Constr.,* 717 F.2d 413, 414 (7th Cir.1983) (remanding for a new trial to determine whether defendant was dissatisfied or whether he was not and the rejection therefore was in bad faith); *Continental Bank v. Everett,* 964 F.2d 701 (7th Cir.1992) (citing U.C.C. definition of honesty in fact), *cert. denied,* 514 U.S. 1018, 115 S.Ct. 1362, 131 L.Ed.2d 219 (1995).

■ Such a standard requires only that the party granted discretion act honestly in invoking the provision. It does not work to "block" the use of the discretionary term in the contract. *See Continental Bank,* 964 F.2d at 705. Rather, it effectuates the intent of the parties by requiring that the party with discretion does not act only to deprive the other party of its rights under the contract by terminating it on a ground for which it did not negotiate. *See, e.g., Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404 (Mo.Ct.App. 1996) (covenant of good faith and fail dealing prevents one party to the contract from exercising judgment conferred by express terms of the agreement in such a mariner that it evades the spirit of the transaction or denies the other party the expected benefit of the contract); *Comprehensive Care Corp. v. RehabCare Corp.,* 98 F.3d 1063 (8th Cir.1996) (each party must do everything the contract

presupposes it will do to accomplish its purpose and the implied covenant of good faith prohibits one party from depriving the other party of its expected benefits under the contract).

■ Plaintiff in this case has alleged sufficient facts which, if proven, would support an inference of bad faith. Plaintiff's essential allegation is that defendants were dishonest in invoking the environmental assessment escape clause. Plaintiff's complaint cites circumstantial evidence supporting such an inference—there was no negative information in the environmental assessment, defendants never expressed any reason at all for their dissatisfaction, and defendants faced other business pressures which made the deal unattractive. In addition, defendants invoked the provision terminating the contract if closing did not occur by December 16, 1994 on the afternoon of that day, after agreeing on December 6, 1994 to extend the closing date to December 19, 1994. This allegation also supports an inference that this reason was pretextual. Of course, the facts alleged may be proven wrong, or additional facts gained through discovery may support other inferences, but for purposes of this motion to dismiss, the Court concludes that plaintiff's allegations are sufficient to state a claim of breach of an implied covenant of good faith and fair dealing.

### ORDER

Based upon all of the files, records and proceedings herein, the Court **REJECTS** that portion of the Report and Recommendation of the Magistrate Judge [Docket No. 35] to which plaintiff objects and **ADOPTS** the remainder of the Report and Recommendation.

**IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss [Docket No. 25] is **DENIED** as to Count I, plaintiff's breach of contract claim.

2. Defendants' motion to dismiss [Docket No. 25] is in all other respects **GRANTED**. Plaintiff's claims against defendant Holliday Fenoglio, Inc. are dismissed with prejudice. Plaintiff's claim in Count II of bad faith tortious breach of contract is dismissed with prejudice.